Your Honor, it is good morning for the petitioner Andrew Frisch. Though the district court has now ruled, this petition has now ruled, after I filed the petition, the district court... Mr. Frisch, before you go on, I just want to make sure folks know that we're using masks, you're free to not use one, it's fine. It looks like you've got that memo, go ahead. I did, thank you Judge. The district court, after I filed the petition and served the judge with a copy of the petition, she ruled. And so the issue is, why am I here today, the district court having ruled, and here's why. You disagree. Well, I disagree, but that's the second reason. I think there's a bigger macro issue which the court can address, and it's this. This petition gives the court an opportunity to address what appears to be a recurring circuit-wide problem with inordinate delay in the resolution of these types of petitions. Some delay is just the nature of the beast, sometimes district judges get pro se applications which are transparently without merit, we've had the pandemic, and sometimes judges just get busy. But here's why this case is different and is a good opportunity for the court to act. And I mean no disrespect to the district judge, but it's not just that I tried to do it in the most respectful way, send her reminders on four different occasions that my client would be irreparably prejudiced if she didn't rule. It's also because she's shown apparent, and I underscore the word apparent, indifference to my client. What do I mean? On direct appeal, this court remanded on the issue of restitution precisely because the district judge did not give him notice and an opportunity to be heard. And then notwithstanding my multiple friendly, hopefully very respectful reminders, she did not rule until I had to come to this court and apply to the court's supervisory power to reassign the case. And so there's an unsettling indifference, apparent indifference to the interest of my client. To be sure, I disagree with the ruling, and I'm not going to litigate that today. The court is not prepared for it. Mr. Miller is here as a courtesy to the court not to engage me on the substance. But on a direct appeal, I have an almost insurmountable hurdle. I'd have to get a certificate of appealability, which perhaps I'll get it. Then the district court's rulings have baked into it certain discretionary findings that would be difficult to unravel. And then, of course, I'd have to get into the appellate queue, which will require further briefing, which would not happen if the court granted my requested relief and reassigned this to another judge with an order for expeditious ruling. Look, I understand— Just so I can understand the different pieces of that, why would there need to be an assignment to a different judge? How would that change the fact that you would still have the same standard that you were facing on appeal and the same timeline and the same queue? It would dissipate the taint. I would ask the court to vacate the rulings, assign it to another judge, and even if that other judge reached the same conclusion, and he or she might, it would dissipate the taint in what's happened in this case, that I've laid out the multiple reminders, not ruling until I file the petition. You want this to be a lesson? I may be using the wrong words, but you want this to be a lesson also in the future so that other judges won't do it? I think that's one way of saying it. I understand that there are these circuit-wide problems that are sometimes best dealt with without calling out a particular judge or without embarrassing or calling bad attention to someone. I'm sure there's conferences or ways that the court can do it, but in deciding what to do here, I ask the court to consider that while I'm just a lawyer, I try to do it in a respectful way on four different occasions, reminding the court of the fact that the petition had not been resolved and the irreparable prejudice to my client if she delayed, especially because I would not have time to apply for a certificate of appealability and all that. And so now I'm left with an adverse ruling with which I disagree, but it's tainted by the manner and timing in which it was resolved. And so I'd ask the court to consider the petition, not just for the benefit of my client, obviously that's my motive, but also to send the right signal about the necessity of dealing with these types of petitions in a timely fashion. Thank you, Mr. Judge. Thank you, Your Honors. Mr. Miller. Thank you, Your Honors. May it please the Court. Brandon Miller from Connecticut for the United States. This case stands alone. The extraordinary remedy requested by the petitioner, Mandamus, is not warranted, both in light of the fact that it's mooted, in this case, by the subsequent ruling of the district court. And additionally, there are no facts whatsoever that support his claim of bias, even either systemically, as he just now alleged for the first time, or specifically in this case. It doesn't meet the three requirements for Mandamus as laid out in this court's jurisprudence. There's other remedies he could ask the judge. He hasn't even asked the district court judge to recuse herself yet. There's no clear right, because as the court's ruling indicates, the habeas was denied, no harm to the offender, and it's just the writ is not appropriate. He says the court didn't do anything, but what that misses is the procedural complexity of this case. At the same time, there was an appeal filed, raising basically two issues, and then there was a habeas filed at the same time. And for example, he says that he wrote to the court, and it's true. On May 4th, he wrote to the court, and what happened? On June 3rd, Judge Augerton had a status conference that's in the appendix, started A115, where she lays out, there are these two parallel tracks of both the restitution issue and the habeas issue, and how do they interplay, and this is how I'm going to handle them in a linear manner. The restitution issue will come first, and then the government's view was that the restitution decision would necessarily implicate the habeas decision, and that's the way it played out. To what extent, if any, would the habeas petition affect his release date? I'm sorry. I didn't hear you. To what extent, if at all, would the habeas petition affect his release date, which is approaching, actually? So his release date, under the guidelines found for both his co-defendant and him, it doesn't affect the release date. If the petitioner got his request, it would have moved it to a two-level, moved it down two levels, and she sentenced at the top of the range, I recall, but he didn't receive that habeas release. And there is a detainer from the state. That's also true, Your Honor. There's an unrelated state detainer that counsel and I were discussing this morning that I'm not privy to, and nor I don't think is the counsel the specifics of, but I think his release from federal custody is being held because of that state detainer, which comes from a judicial district in Connecticut. But that would, in any event, affect his time in prison? Absolutely, Your Honor. That's true. Thank you. If there's nothing further, I'll conclude my remarks. Thank you. Thank you. Mr. Pritchett, any rebuttal? No rebuttal, Your Honor. I appreciate it. Thank you.   Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Folks here for the Powells-Deloitte case? Thank you. Is there a reason why this is on? Thank you.